```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,                    MEMORANDUM
                                             and ORDER
            Plaintiff,

   - against -                               04-CR-774 (TCP)

MICHAEL PESCATORE, et al.,

            Defendants,

SANFORD EDMONSTON,

            Movant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
```
PLATT, District Judge

        Defendant Sanford Edmonston ("Edmonston" or "Defendant") moves this Court to suppress statements made to authorities during the search of the premises of Astra Motors, Inc. ("Astra Motors" or "Astra") on June 17, 2003. For the following reasons, Defendant's motion to suppress is **DENIED**.

## BACKGROUND

        As an initial matter, it should be noted that law enforcement officials questioned the Defendant on three occasions on June 17, 2003.

      1.     At approximately 11:00 a.m. Investigator ("Inv.") Michael Mulcahy, the Assistant Director of the Division of Field Investigation for the New York State Department of Motor Vehicles ("NYSDMV"), asked the Defendant three questions while he (Mulcahy) and Detective ("Det.") Robert Petro of the Suffolk County Police Department ("SCPD") searched the Defendant's office. Det. Petro then orally advised Edmonston of his *Miranda* rights. (Gov. Opp. Def.'s Mot. Suppress at 3-5).

2. At approximately 12:00 p.m., SCPD Detective Hansen and Sargent Gozloff interviewed Edmonston in his office (*Id.* at 5.)

3. At approximately 1:00 p.m., Edmonston was placed under arrest, and made statements to SCPD Detective Lawrence Conde while being transported to a Suffolk County Police Precinct. (*Id.*)

The Government only seeks to introduce statements Edmonston made during his first discussion with law enforcement (Def.'s Letter, February 21, 2006 at 1.) Thus, the interviews at 12:00 p.m. and 1:00 p.m. will not be addressed in this Memorandum and Order.

On June 17, 2003, approximately fifty (50) law enforcement officials from various local, state, and federal agencies conducted a search of Astra Motors pursuant to a duly issued and executed search warrant.[1] (Gov Opp. Def.'s Mot. Suppress at 2.) Initially though, only two officers entered the premises: Inv. Mulcahy and Det. William O'Hearn of the SCPD. The two officers saw Edmonston upon entering the building and informed him that they had a warrant to search the premises.

Subsequently, the search team entered the building. One member of the team told the Astra employees to remain where they were until the building was secured. About this time, Det. Petro entered the first floor area and introduced

---

[1] While the Government's memorandum states that fifty (50) officers participated in the search, Investigator Mulcahy remembers only twenty-five (25) to thirty (30) officers. (Tr. at 6.)

himself to Edmonston.  He then asked Edmonston to open any safes in the building.  Edmonston agreed and directed Det. Petro to an adjoining office, which he shared with Michael Pescatore.  Edmonston then opened the safe and counted the money inside. (Transcript of hearing ("Tr.") 04-774, February 10, 2006 at 11-12.)

Shortly thereafter, Inv. Mulcahy entered the office and began searching through Edmonston's desk.  Inv. Mulcahy found a document bearing the name "Phil Edmonston."  Mulcahy recognized the name from a prior investigation and knew it was Edmonston's alias. (Tr. at 12-13.)  He asked rhetorically "who is Phil Edmonston?" and the Defendant replied "it is not what you think."  Edmonston then explained that he had a criminal record and used the name Phil to prevent the police from bothering or harassing him. (Tr. at 13.)

Inv. Mulcahy went back to searching through the desk drawers.  A short time later, he asked Edmonston whether he knew Gerard Lane, a person who was deceased, but whose name Astra Motors allegedly used to generate fraudulent paperwork. (*Id.*)  Edmonston replied that he knew Lane.  Inv. Mulcahy continued his search and came across a white cloth bag that contained a public Vehicle Identification Number ("VIN") and a confidential VIN, which he knew it was illegal to possess.  He then asked rhetorically "well, what are these?"  The Defendant replied that they came off a wrecked car that Astra bought, and that he was just messing around with them. (Tr. at 14, 36.)

Edmonston was never physically restrained during the search. Law enforcement officials never searched his person or displayed their weapons. (Tr. at 16.) Moreover, Inv. Mulcahy and Det. Petro did not prevent Edmonston from moving. In fact, Edmonston was standing while Inv. Mulcahy was sitting. (Tr. at 34.)

Inv. Mulcahy testified that he did not hear Edmonston request an attorney. (Tr. at 31.) This is not inconsistent with Edmonston's affidavit. While the Defendant states that he repeatedly requested a lawyer, he fails to state when or to whom he made such a request.

## PROCEDURAL HISTORY

On December 1, 2005, Edmonston submitted a motion to this Court requesting suppression of certain statements he made on June 17, 2003. Attached to his motion, Defendant submitted his own affidavit as well as affidavits from his attorneys Gary Lesser and Mark Cohen. On February 10, 2006, an evidentiary hearing was held and the Government called one witness, Inv. Mulcahy. On February 21, 2006, the parties submitted supplemental briefs based on the hearing.

## DISCUSSION

### I. Custodial Interrogation

Defendant argues that Edmonston's three statements must be suppressed because he made them (i) while "in custody", (ii) before his "arrest",

(iii) before being given any *Miranda* warnings, and (iv) in response to questioning by law enforcement officials.

For a Defendant's *Miranda* rights to be triggered, the Defendant must be subjected to "custodial interrogation." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990). The Second Circuit has held that the "in custody" requirement is met when a defendant's freedom of action is "curtailed to a degree associated with formal arrest." *United States v. Newton*, 369 F.3d 659, 671 (2d Cir. 2004) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). Courts consider a number of factors in determining the degree to which a defendant's freedom has been curtailed. The first is whether a reasonable person in the suspect's shoes would believe that his detention was not likely to be "temporary and brief." The second is whether a person stopped under the circumstances would feel that he "was completely at the mercy of the police." *Id.* at 675. A court will also consider whether the interrogation occurred in surroundings that were familiar to the suspect. *Id.*

In *Newton*, officers entered the defendant's home to search for a gun. While conducting the search, officers handcuffed the defendant. *Id.* at 663-664. The Second Circuit relied on this fact and held that Newton was in custody for *Miranda* purposes. Applying the factors noted above, the Second Circuit reasoned that "a reasonable person finding himself placed in handcuffs by the police would ordinarily conclude that his detention would not necessarily be temporary or brief and that his movements were not totally under the control of the police." *Id.* at 676.

Here, in contrast, Edmonston was never physically restrained. The investigators' search was quite brief, about a half an hour, and Edmonston had no reason to think it would last any longer than that. (Tr. at 35.) Finally, Edmonston, though not in his home, was questioned in the familiar surroundings of his office. *See Beckwith*, 425 U.S. at 347 (defendant was not in custody during in-home interview with IRS agent).

It should also be noted that Edmonston was questioned in his office during business hours by officials who did not have their guns on display (Tr. at 16.) Thus, the facts here are distinguishable from situations where the Second Circuit held that a suspect was in custody. *See Orozco v. Texas*, 394 U.S. 324, 326-27 (1969) (defendant was in custody when confronted in his bedroom by four officers at 4 a.m.); *see also United States v. Ali*, 68 F.3d 1468, 1473 (2d Cir. 1995) (airline passenger was in custody where he was surrounded by seven customs officers with visible handguns who asked him to step away from the boarding area).

Defendant argues he was placed in custody because he was "[s]urrounded by dozens of law enforcement agents[.]" (Def.'s Letter, February 21, 2006 at 3.) This statement has absolutely no basis in the record. Only two or three officers accompanied Defendant into his office. It is unreasonable to claim that law enforcement officials who were far removed from the Defendant's presence and fully engaged in searching the yard of Astra Motors were somehow "surrounding" the Defendant.

Defendant further argues that he was in custody because officers told him and other Astra employees to "stay where they were" while the officers secured the building. (Def.'s Letter, February 21, 2006 at 3.) However, a defendant is not in custody merely because he is told to remain in one place for a brief period. *See United States v. Badmus*, 325 F.3d 133, 139 (2d Cir. 2003) (defendant was not in custody despite being asked by agents to remain seated in his living room).[2]

## II. Defendant's Request for Counsel

This Court has found that Defendant's *Miranda* rights were not triggered because he was not questioned while in custody. However, even if Edmonston was in custody, this Court would still deny Defendant's motion because he has failed to show that he requested an attorney during the search of his office. Defense counsel attempts to obscure this point by citing Defendant's affidavit which states that he "repeatedly requested to speak to his lawyer on June 17, 2003." (Def.'s Letter, February 21, 2006 at 5.) Significantly, no time is specified for any such request. Counsel also points out that two of Edmonston's attorneys attempted to speak to him that day but were not permitted to do so. (*Id.*) However, the affidavits from the attorneys do not indicate how or when they

---

[2] Because this Court finds that Edmonston was not in custody, it does not reach the issue of whether the questioning constituted an interrogation for *Miranda* purposes. We note in passing however, that the three questions posed by the investigator were hardly an inquisition.

learned of the Defendant's situation.  The only logical conclusion this Court can draw is that no request was made to either Inv. Mulcahy or Det. Petro during their search of the Defendant's office.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress statements made to law enforcement is hereby **DENIED**.

**SO ORDERED**.

/S/_____
Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
February 27, 2006